1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| AMBER GARGANO, | Case No.: 22-cv-00735-DMS-MMP |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| PLUS ONE HOLDINGS, INC., | |
| Defendant. | |

11
12
13
14
15

16          Pending before the Court is Defendant Plus One Holding's Motion for Summary

17 Judgment.  (ECF No. 19.)  In this diversity case, Plaintiff, Amber Gargano ("Gargano"), a

18 citizen of California, sues her employer, Plus One Holdings, Inc. ("Plus One"), a Delaware

19 corporation with its principal place of business in New York, asserting various causes of

20 action related to disability discrimination in employment in violation of California's Fair

21 Employment and Housing Act (FEHA).  Plaintiff filed a response in opposition to the

22 motion (ECF No. 23) and defendant filed a reply in support of its motion (ECF No. 27).

23 For the reasons explained below, the Court **DENIES** the motion in full.

24                              **I.    STATEMENT OF FACTS**

25          Plus One hired Plaintiff as an Exercise Specialist in February 2014.  (Compl. ¶ 8,

26 ECF No. 1-3.)   Plaintiff held various positions, including fitness instructor, exercise

27 specialist, and personal trainer.  (*Id.*)  It appears there were no issues with Plaintiff's

28 employment until October 2020 when Plaintiff began to suffer severe abdominal pain and

was diagnosed with diverticulitis. (*Id.* ¶¶ 9–10.) As a result of her illness, Plaintiff suffered from pain in her back and legs which limited her ability to work. (*Id.* ¶ 11.) On October 28, 2020, Plaintiff informed her supervisor Patrick Hargrave ("Hargrave"), the local general manager, of her illness and made a request to him for a leave of absence from work. (Decl. of Patrick Hargrave ("Hargrave Decl.") ¶ 6 & Ex. B, ECF No. 19-4; Decl. of John P. Nordlund ("Nordlund Decl.") ¶ 4 & Ex. C (Hargrave Depo.), at 61, 65 & Ex. 29, ECF No. 19-2.) On November 5, 2020, Hargrave provided Plaintiff with leave paperwork. (Hargrave Decl. ¶ 6.) On November 17, 2020, Plaintiff submitted the completed leave documentation to human resources administrator Charina Delacruz ("Delacruz"), who placed Plaintiff on leave through December 14, 2020. (Decl. of Charina Delacruz ("Delacruz Decl.") ¶ 10 & Ex. C, ECF No. 19-3; Nordlund Decl. ¶ 3 & Ex. B (Delacruz Depo.), at 54–56 & Ex. 3.)

On December 8, 2020, Hargrave texted Plaintiff: "I know you are recovering, but wanted to see if you had an idea of a timeframe for returning and/or teaching?" (Hargrave Decl. ¶¶ 8, 10 & Ex. C; Nordlund Decl. ¶ 4 & Ex. C (Hargrave Depo.), at 61, 68, & Ex. 29; Nordlund Decl. ¶ 2 & Ex. A (Gargano Depo.), at 214, 218, & Ex. 31.) On December 9, 2020, Plaintiff responded, "2nd or 3rd week of January." (Hargrave Decl. ¶ 8, 10 & Ex. C; Nordlund Decl. ¶ 2 & Ex. A (Gargano Depo.), at 214, 219 & Ex. 31; Nordlund Decl. ¶ 4 & Ex. C (Hargrave Depo.), at 61, 68 & Ex. 29.) On December 23, 2020, Gargano texted Hargrave, "At this time it doesn't look like I can teach in January." (Hargrave Decl. ¶¶ 9–10 & Ex. C; Nordlund Decl. ¶ 2 & Ex. A (Gargano Depo.), at 214, 220 & Ex. 31; Nordlund Decl. ¶ 4 & Ex. C (Hargrave Depo.), at 69 & Ex. 29.) Hargrave texted back, "Ok. Geez. Sorry you are going through this." (Nordlund Decl. ¶ 2 & Ex. A (Gargano Depo.), at 214, 223 & Ex. 31; Hargrave Decl. ¶¶ 9–10 & Ex. C.)

The facts are less certain beyond this point. On February 10, 2021, Delacruz sent an email to Gargano's work email address to inquire as to Plaintiff's return to work status. (Delacruz Decl. ¶ 13 & Ex. E.) Defendant maintains that Delacruz sent the email to Plaintiff's work email address inadvertently and expected that Plaintiff would respond. (*Id.*

2

¶ 13.)  Plaintiff claims she never received the email because she did not have access to her work email inbox.  (Decl. of Pl. Amber Gargano ("Gargano Decl.") ¶ 5, ECF No. 23-1.)  Then, on March 18, 2021, Delacruz mailed a letter to Plaintiff requesting supplemental medical documentation in order to extend Plaintiff's leave.  (Delacruz Decl. ¶ 14 & Ex. F.)  Plaintiff maintains she never received the letter, (*see* Gargano Decl. ¶ 6 & Ex. 1, No. 59), and points out that the letter Defendant produced did not include Plaintiff's apartment number (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") 9, ECF No. 23, referencing Delacruz Decl. ¶ 14 & Ex. F).  On March 30, 2021, Delacruz mailed a second letter to Plaintiff informing her that her employment had been terminated.  (Delacruz Decl. ¶ 16 & Ex. G.)  Plaintiff asserts she did not receive this letter (*see* Gargano Decl. ¶ 6 & Ex. 1, No. 59) and points out that the second letter also did not include the specific apartment number (Pl.'s Mem. at 10, referencing Delacruz Decl. ¶ 16 & Ex. G).  Plaintiff notes that no one from Plus One called or sent a text message to Plaintiff even though Plus One had done so to communicate with Plaintiff previously.  (Pl.'s Mem. at 9.)

On April 15, 2021, Plaintiff sent Hargrave a text message to check in.  (Gargano Decl. ¶ 6 & Ex. 1, No. 54.)  Hargrave responded that Human Resources had sent Plaintiff "multiple emails" and "something via direct mail" regarding Plus One's "leave policy." (Gargano Decl. ¶ 6 & Ex. 1, No. 59.)  Plaintiff again stated: "I have no way to access my email.  They should know that.  Nothing in the mail.  Would have been nice to hear from my GM …" (Nordlund Decl., Ex. C, at GARGANO00041.)  Later that same day, Plaintiff received a call from Delacruz.  (Decl. of Mark Lim ("Lim Decl."), Ex. 1, at 60, ECF No. 23-2.)  Plaintiff expressed that she believed she was still on medical leave and offered to provide additional medical documentation.  (Nordlund Decl., Ex. A, at 153–57.)  Plaintiff again explained that she did to have access to her work email account and never received the mailed letters.  (Nordlund Decl., Ex. A, at 154.)  On April 23, 2021, Plaintiff sent Delacruz a follow-up email, stating "I've double checked my mailbox and nothing has come as of yesterday.  It is a lock box so nothing could have fallen out thankfully." (Nordlund Decl., Ex. A, at GARGANO00319.)

On July 15, 2021, Plaintiff informed Delacruz that she would be able to return to work on August 9, 2021.  (Nordlund Decl., Ex. B (Delacruz Depo.), at 68 & Ex. 12.)  On August 3, 2021, Plaintiff sent a follow-up email, stating, "I never heard back from you regarding my return to work."  (Nordlund Decl., Ex. A, at 245.)  On August 6, 2021, Delacruz responded, "I am confirming I have received your return to work status and am currently reviewing.  I have reached out to your direct supervisor to review and determine if there are any open positions available at this time."  (Lim Decl., Ex. 1, at 91–92 & Ex. 21.)  On August 19, 2021, Plaintiff again followed up with Delacruz.  (Lim Decl., Ex. 1, at 93–94 & Ex. 22.)  On August 27, 2021, Delacruz responded: "At this time, we are still confirming the details on any available positions.  I will keep you updated on any new information.  I will also reach out to my colleague Carrie Lieu for any potential openings as well."  (*Id.*)  There is no evidence in the record of any communication between Plaintiff and either Delacruz or Lieu after August 27, 2021.

## II.   PROCEDURAL BACKGROUND

On April 18, 2022, Plaintiff filed a complaint in San Diego County Superior Court raising six claims: (1) disability discrimination in violation of California Government Code § 12940(a); (2) failure to accommodate disability in violation of California Government Code § 12940(m); (3) failure to engage in interactive process in violation of California Government Code § 12940(n); (4) retaliation in violation of California Government Code § 12940(h); (5) failure to prevent discrimination and retaliation in violation of California Government Code § 12940(k); and (6) wrongful termination in violation of public policy. (*See generally* Compl., ECF No. 1-3.)  On April 20, 2022, Defendant was served with a copy of the Complaint and a summons.  (Def.'s Notice of Removal ¶ 4, ECF No. 1.)  On May 19, 2022, Defendant filed its Answer in the State Court and served it upon Plaintiff. (*Id.* ¶ 6.)  On May 20, 2022, Defendant timely removed this action to federal court on the basis of diversity jurisdiction.  (*See generally* Notice of Removal.)

Discovery concluded in February 2023.  (*See* Amended Scheduling Order ¶ 1, ECF No. 16.)  On March 13, 2023, Defendant filed its motion for summary judgment.  (ECF

4

No. 19.)  On April 11, 2023, Plaintiff filed her Opposition.  (ECF No. 23.)  On April 17, 2023, Plaintiff filed a supplemental declaration.  (ECF No. 26.)  On April 21, 2023, Defendant filed a reply in support of its motion for summary judgment.  (ECF No. 27.)  On April 27, 2023, the Court concluded that this matter was suitable for decision without oral argument and took the matter under submission.  (ECF No. 28.)

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers a court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*  "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, . . . admissions on file, . . . [and] affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A fact is material when it affects the outcome of the case." *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 1076, 1089 (S.D. Cal. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party, in this case Defendant, bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party, in this case Plaintiff, failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial.  *Id.* at 322–23.  "Once the moving party has satisfied this burden, the

nonmoving party must 'go beyond the pleadings and[,] by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file[,] designate specific facts showing that there is a genuine issue for trial.'" *Martinez*, 481 F. Supp. at 1089 (quoting *Celotex*, 477 U.S. at 324). "If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Celotex*, 477 U.S. at 325).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, the court makes no credibility determinations and draws no inferences, *see Anderson*, 477 U.S. at 255, and "view[s] the evidence in the light most favorable to the nonmoving party," *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). Thus, in ruling on this motion, the Court must view the record in the light most favorable to Plaintiff, the non-moving party.

## IV.   DISCUSSION

### A. First Cause of Action – Disability Discrimination under FEHA

California's Fair Employment and Housing Act (FEHA) "prohibits an employer from . . . discharging a person from employment because of a medical condition or physical disability." *Soria v. Univision Radio L.A., Inc.*, 5 Cal. App. 5th 570, 583 (2016) (citing Cal. Gov't Code § 12940(a)). "In order to prevail on a discriminatory discharge claim under section 12940(a), an employee bears the burden of showing (1) that he or she was discharged because of a disability, and (2) that he or she could perform the essential functions of the job with or without accommodation," i.e., "that he or she is a qualified individual with a disability." *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal. App. 4th 952, 962 (2008).

Defendant argues the claim for disability discrimination under California Government Code § 12940(a) fails because under California's three-stage burden-shifting test, Plaintiff cannot establish a prima facie case of disability discrimination because she cannot prove that she was a "qualified individual" capable of performing the essential

functions of her position, (Def.'s Mem. of P. & A. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") 17–18, ECF No. 19-1); and alternatively, even if Plaintiff can establish a prima facie claim, Defendant can articulate a non-discriminatory legitimate business reason for its actions, (*id.* at 17–18). Plaintiff responds that the three-stage burden-shifting test does not apply where, as here, Plaintiff has direct evidence of the employer's motivation. (Pl.'s Mem. at 21.)

The Court agrees with Plaintiff and concludes that there are triable issues as to both (1) whether Plaintiff was discharged because of her physical disability and (2) whether Plaintiff was a "qualified individual." Therefore, the Court denies Defendant's motion with respect to Plaintiff's disability discrimination claim.

1. <u>Discharge Due to Disability</u>

"[T]he applicable legal standards for a disability discrimination action vary depending on whether the case is based on direct or circumstantial evidence of discrimination." *Furlow v. TWC Admin., LLC*, No. 18-CV-01734-JAK, 2019 WL 9834332 (C.D. Cal. Aug. 23, 2019). In *Wallace v. County of Stanislaus*, the California Court of Appeal explained:

> The distinction between cases involving *direct evidence* of the employer's motive for the adverse employment action and cases where there is only *circumstantial evidence* of the employer's discriminatory motive is critical . . . . [Where there is] no direct evidence that the adverse employment action taken by the employer was motivated by race, religion, national origin, age or sex . . . , proof of discriminatory motive is governed by the three-stage burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The three stages are (1) the plaintiff making a prima facie showing of employment discrimination, (2) the employer producing a legitimate reason for the adverse employment action, and (3) the burden shifting back to the plaintiff to prove intentional discrimination by offering evidence of the employer's discriminatory motive, which can include attacking the employer's proffered reasons as pretexts for discrimination. *Guz v. Bechtel National Inc.*, 24 Cal. 4th 317, 354–56 (2000).
>
> The three-stage framework . . . do[es] not apply in discrimination cases where, like here, the plaintiff presents direct evidence of the employer's motivation

> for the adverse employment action. In many types of discrimination cases, courts state that direct evidence of intentional discrimination is rare, but disability discrimination cases often involve direct evidence of the role of the employee's actual or perceived disability in the employee's decision to implement an adverse employment action.

245 Cal. App. 4th 109, 122–23 (2016) (citations modified). Where, as in *Wallace*, a plaintiff has presented "direct evidence of the employer's motivation for the adverse employment action," the question is whether the employee's "disability is a substantial motivating reason for the employer's decision to subject the employee to an adverse employment action." *Id.* at 128.

Plaintiff has offered direct evidence of disability discrimination. Plaintiff has shown that Defendant was aware of Plaintiff's medical condition. (Gargano Decl., Ex. 1, No. 21.) Defendant acknowledged that Plaintiff needed to take a leave of absence and that Plaintiff needed to focus on resting and healing. (Gargano Decl. Ex. 1, No. 25.) Hargrave thought there might be a "disability" option for Plaintiff. (*See* Gargano Decl., Ex. 1, No. 38.) He said in a text message to Plaintiff: "I reached out to [HR] about a leave of absence and what options you have. I'm not sure how disability works but asked them if it's something you can claim for medical reasons." (*Id.*) Further, on November 16, 2020, Plaintiff's doctor completed a "Health Care Provider Accommodation" form, (Nordlund Decl., Ex. B, Ex. 3), which was delivered to Delacruz, (Nordlund Decl., Ex. B (Delacruz Depo.), at 56). The form indicated that Plaintiff would be unable to perform the essential functions of her job until at least December 14, 2020. (Nordlund Decl., Ex. B, Ex. 3.) On December 23, 2020, Plaintiff updated Hargrave and informed him that she would likely not be able to return in January due to continued medical issues that required the care of a spinal specialist. (Gargano Decl. Ex. 1, No. 52.)

Then, as described above, Delacruz sent the email requesting an update on Plaintiff's medical condition to Plaintiff's work email account which Plaintiff could not access. Delacruz then mailed the two letters that Plaintiff asserts she never received because Delacruz failed to include her apartment number in the address. In the first letter sent

8

22-cv-00735-DMS-MMP

March 18, 2021, Delacruz requested updated medical records. (Delacruz Decl. ¶ 14 & Ex. F.) In the second letter sent March 30, 2021, Delacruz wrote to inform Plaintiff that her employment had been terminated effective March 29, 2021. (Delacruz Decl. ¶ 16 & Ex. G.) The second letter stated:

> [Y]ou have been out of office per a medical accommodation. . . . Although we have accommodated your leave through March 29, 2021, we cannot commit to continue holding this position for you indefinitely . . . . Your employment with Plus One and all of Plus One benefit programs will be terminated effective March 29, 2021.

(*Id.*) "This evidence is sufficient to create a triable issue as to whether Plaintiff's physical disability," i.e., Plaintiff's inability to work as of her termination date without an additional leave of absence, was a "'substantial motivating factor'" in Plus One's decision to terminate Plaintiff's employment. *Furlow*, 2019 WL 9834332, at \*12 (quoting *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013)).

    2. <u>Qualified Individual</u>

    "A 'qualified individual with a disability'" is someone "'who, with or without reasonable accommodation, can perform the essential functions of the . . . position that such individual holds or desires.'" *Brundage v. Hahn*, 57 Cal. App. 4th 228, 235 (1997) (quoting 42 U.S.C. § 12111(8)).[1]  However, if "medical leave was a reasonable accommodation, then [a plaintiff's] inability to work during the leave period would not automatically render her unqualified. Determining whether a proposed accommodation (medical leave in this case) is reasonable, including whether it imposes an undue hardship on the employer, requires a fact-specific, individualized inquiry." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999); *see also Villalobos v. TWC Admin. LLC*, 720 Fed. Appx. 839, 841 (9th Cir. 2017) (holding that under FEHA, "the proper inquiry for an otherwise qualified individual who is terminated while on leave is whether the leave

---

[1] "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying [California's] own statutes." *Guz*, 24 Cal. 4th at 354.

was a reasonable accommodation and did not impose an undue hardship on the employer").

"[A] request for medical leave can be unreasonable as a matter of law." *Furlow*, 2019 WL 9834332, at *8. California law distinguishes between an "indefinite" leave of absence, which is likely to be unreasonable as a matter of law, and a "finite" one, which is more likely to be found reasonable. *See Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 721 (2017) ("FEHA may require as a reasonable accommodation a finite leave of absence to allow an employee time to recover from temporary injuries, but FEHA does not generally require an employer to provide an indefinite leave of absence . . . .").

> When the employee cannot presently perform the essential functions of the job, or otherwise needs time away from the job for treatment and recovery, holding a job open for an employee on a leave of absence or extending a leave . . . may be a reasonable accommodation provided that the leave is likely to be effective in allowing the employee to return to work at the end of the leave, with or without further reasonable accommodation, and does not create an undue hardship for the employer. . . . An employer, however, is not required to provide an indefinite leave of absence as a reasonable accommodation.

Cal. Code Regs. tit. 2, § 11068(c).

Summary judgment in the employer's favor can be appropriate where the identified accommodation can only be construed as a request for indefinite leave. *See, e.g.*, *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 744 (9th Cir. 2011) (employer not required to further extend disability period when it has afforded a period sufficient for rehabilitation). "An unreasonable indefinite leave may be present, for example, where the accommodation at issue would involve 'repeated leaves of absence for an employee who has a poor prognosis of recovery.'" *Furlow*, 2019 WL 9834332, at *8 (quoting *Nadaf-Rahrov*, 166 Cal. App. 4th at 988). However, "the mere fact that a medical leave has been repeatedly extended does not necessarily establish that it would continue indefinitely." *Nadaf-Rahrov*, 166 Cal. App. 4th at 988. "The key question in determining whether a finite leave is reasonable is whether 'it is likely that at the end of the leave, the employee would be able to perform his or her duties.'" *Furlow*, 2019 WL 9834332, at *8 (quoting *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999)). "In some

circumstances, an employer may need to consult directly with the employee's physician to determine the employee's medical restrictions and prognosis for improvement or recovery." *Nadaf-Rahrov*, 166 Cal. App. 4th at 988–89.

Whether Plaintiff's requested accommodation amounted to a request for indefinite leave is a genuine issue of material fact. Plaintiff points out that in Hargrave's December 8, 2020, text message to Plaintiff, Hargrave recognized that Plaintiff "ha[d] some recourse and a path toward getting better." (Gargano Decl., Ex. 1, No. 49.) In addition, when Plaintiff checked in with Hargrave on April 15, 2021, she informed him that she was "[s]till on the road to recovery but making progress." (Gargano Decl., Ex. 1, No. 54.) Construing this evidence in the light most favorable to Plaintiff, as the Court must at this stage, Defendant has not conclusively proven that Plaintiff requested an unreasonable indefinite leave.

Because genuine issues of material fact exist as to both whether Plaintiff was discharged because of her physical disability and whether she was a qualified individual, the Court denies Defendant's Motion with respect to Plaintiff's claim for disability discrimination.

## B. Second Cause of Action – Failure to Accommodate Disability

FEHA "imposes on the employer the obligation to make reasonable accommodation." *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1003 (2009).

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California . . . [f]or an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.

Cal. Gov't Code § 12940(m). "To establish a reasonable accommodation claim, an employee must show that (1) the employee has a disability under FEHA, (2) the employee is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the employee's disability." *Aparicio v. Comcast, Inc.*, 274 F. Supp. 3d 1014, 1029 (N.D. Cal. 2017) (citing *Scotch*, 173 Cal. App. 4th at 1009–10). "A

reasonable accommodation is 'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.'" *Id.* (quoting *Nadaf-Rahrov*, 166 Cal. App. 4th at 974). However, "[a]n employer is not required to make an accommodation 'that is demonstrated by the employer . . . to produce undue hardship to its operation.'" *Scotch*, 173 Cal. App. 4th at 1003 (quoting Cal. Gov't Code § 12940(m)).

Defendant argues that Plaintiff was not a qualified individual, and in the alternative, that it did not fail to reasonably accommodate Plaintiff because Defendant granted Plaintiff "an extended unprotected leave of absence beyond the twelve (12) weeks set forth in Plus One's policies" and kept Plaintiff's position open for "fifteen (15) weeks beyond her known return to work date despite the lack of communication or supplemental medical documentation" from Plaintiff. (Def.'s Mem. at 15.) Plaintiff argues she was a qualified individual and that Defendant fired her "because of her need for and request for medical leave as an accommodation to treat her known or perceived disabilities." (Compl. ¶ 35.)

As with the claim for disability discrimination, genuine issues of material fact exist here as to both whether Plaintiff's request for accommodation was an unreasonable request for indefinite leave or a reasonable request for a finite leave of absence, and as to whether Plaintiff was a qualified employee. The same legal standards control as to these shared elements of the two claims. *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 378 (2015) ("The showing required" for the "qualified individual" prong of a disability discrimination case "is identical to that required for a cause of action for failure to reasonably accommodate."). In *Furlow*, a case in which the plaintiff similarly raised both a disability discrimination claim and a failure to accommodate claim, the court explained: "Because of the substantial overlap between the reasonable accommodation and discrimination claims, the triable issues identified with respect to the discrimination claim also preclude summary judgment as to the reasonable accommodation claim." *Furlow*, 2019 WL 9834332, at *13. The same is true here. Therefore, the Court denies Defendant's Motion with respect to Plaintiff's claim for failure to accommodate disability.

## C. Third Cause of Action – Failure to Engage in Interactive Process

Under FEHA, it is unlawful for an employer to "fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov. Code § 12940(n). The employer's duty to engage in the interactive process is generally "triggered upon notification of the disability and the desire for accommodation." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). The California Court of Appeal has explained:

> [T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed. This rule fosters the framework of cooperative problem-solving contemplated by the ADA, by encouraging employers to seek to find accommodations that really work.

*Scotch*, 173 Cal. App. 4th at 1013 (quoting *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001)).

Defendant argues that it did not fail to engage in the interactive process because the record shows that Defendant acted in good faith to engage in the interactive process and reasonably accommodated Plaintiff's disability. (Def.'s Mem. at 15–16.) Plaintiff responds that Defendant's pattern of actions shows that Defendant did not engage in the interactive process in good faith. (Pl.'s Mem at 16–17.)

The Court concludes that Defendant's pattern of conduct as identified above demonstrates a genuine issue of material fact as to whether Defendant failed to engage in the interactive process in good faith. A jury could find that Defendant's actions—sending an email to an inaccessible account and failing to include Plaintiff's apartment number on mailed communications rendering them undeliverable—established that Defendant failed to engage in good faith. This is especially true given that Defendant knew of proven and

reliable methods of communication with Plaintiff (text message and phone) and did not make use of them. Because a genuine issue of material fact exists as to whether Defendant engaged in the interactive process in good faith, the Court denies Defendant's Motion with respect to the claim for failure to engage in the interactive process.

**D. Fourth Cause of Action – Retaliation**

FEHA "makes it unlawful for an employer 'to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA].'" *Scotch*, 173 Cal. App. 4th at 1003 (quoting Cal. Gov't Code § 12940(h)). To state a claim for retaliation, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action[,] and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). "This requires evidence from which a reasonable factfinder can infer the decision maker (or at least one of them if more than one) in the challenged action was aware of the protected activity." *Pinder v. Emp. Dev. Dep't*, 227 F. Supp. 3d 1123, 1147 (E.D. Cal. 2017). Since 2016, a request for a reasonable accommodation is protected activity. *See Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 248 (2016) (FEHA was amended in 2015 "to provide protection against retaliation when an individual makes a request for reasonable accommodation under these sections" effective January 1, 2016) (quoting Assemb. B. 987, § 1(d), 2015-2016 Reg. Sess. (Cal. 2015)).

Defendant argues that Plaintiff cannot establish a retaliation claim because there is no causal link between Plaintiff's request for an accommodation and her termination of employment. (*See* Def.'s Mem. at 18–19.) Defendant argues instead that Plaintiff's termination can be explained by a "non-discriminatory, non-retaliatory business reason." (*Id.*) Defendant asserts that Plaintiff "was terminated because she ostensibly abandoned her position and Plus One needed to prepare for on-site employees to support in-person

14

operations" for the resumption of in-person operations at gyms following the COVID pandemic. (*Id.* at 19.)  Defendant asserts it should prevail so long as it reasonably believed that Plaintiff abandoned her position "even if" it is later "shown to be untrue or incorrect." (*Id.*, citing *Stephens v. Coldwell Banker Com. Grp., Inc.*, 199 Cal. App. 3d 1394, 1400 (1988).)

A reasonable trier of fact could conclude that Defendant's pattern of conduct explained above shows that Defendant retaliated against Plaintiff for requesting an accommodation by terminating her employment.  But even if a reasonable trier of fact credits Defendant's assertion that it terminated Plaintiff's employment because it believed Plaintiff had abandoned her position, there remains a genuine issue of material fact as to whether Defendant's belief was reasonable.  Defendant has not conclusively shown that its belief was reasonable.  Accordingly, the Court denies Defendant's motion for summary judgment as to Plaintiff's claim for retaliation.

### E. Fifth Cause of Action – Failure to Prevent Discrimination and Retaliation

"Under FEHA, it is unlawful for an employer to 'fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring' in the workplace." *Furlow*, 2019 WL 9834332, at *14 (quoting Cal. Gov't Code § 12940(k)).  To prevail on a theory of failure to prevent discrimination or retaliation, the following must be shown: (1) "plaintiff was subjected to discrimination . . . or retaliation"; (2) "defendant failed to take all reasonable steps to prevent discrimination . . . or retaliation"; and (3) the defendant's failure "caused plaintiff to suffer injury."  *Leleand v. City & County of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008).

Defendant's only argument is that Plaintiff cannot prevail on her claim for failure to prevent discrimination because she "cannot establish discrimination or retaliation." (Def.'s Mem. at 20.)  First, whether Plaintiff was subjected to discrimination, harassment, or retaliation is a genuine issue of material fact that overlaps with the issues in the first and fourth causes of action (disability discrimination and retaliation), as explained above. Defendant makes no argument as to the second or third elements.  The Court concludes

that a reasonable factfinder could find that Defendant "should have taken further steps including additional communication with Plaintiff or her physician to attempt to obtain an estimated return to work date." *Furlow*, 2019 WL 9834332, at *15. "Because factual issues are presented" on whether there were additional steps that Defendant could take and whether those steps would have been reasonable, "summary judgment is unwarranted." *Id.* Accordingly, the Court denies Defendant's motion for summary judgment as to the claim for failure to prevent discrimination or retaliation.

**F. Sixth Cause of Action – Wrongful Termination in Violation of Public Policy**

"Under California law, employment is at-will unless the parties contract otherwise. California courts, however, have carved out a specific exception to this general rule: an employer will be liable if it terminates an employee in violation of public policy." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003). The elements for the tort of wrongful termination in violation of public policy are: "(1) the existence of a public policy and (2) a nexus between the public policy and an employee's termination." *Dep't of Fair Emp. & Hous.*, 642 F.3d at 749. In California, "disability discrimination can form the basis of a common law wrongful discharge claim." *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1161 (1998); *see also* Cal. Gov't Code § 12920 ("It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical disability.").

Plaintiff's claim for wrongful termination in violation of public policy overlaps with the cause of action for disability discrimination. *See Estes v. Monroe*, 120 Cal. App. 4th 1347, 1355 (2004) (the viability of plaintiff's tort claim based on disability discrimination is "tethered to the meaning of the FEHA"). Plaintiff's termination is the "principal adverse employment action that underlies her disability discrimination claim." *Furlow*, 2019 WL 9834332, at *14. Therefore, for the same reasons as explained in the analysis of Plaintiff's disability discrimination claim, there are genuine disputes of material fact regarding wrongful termination. *See id*; *cf. Faust v. Cal. Portland Cement Co.*, 150 Cal. App. 4th

864, 886 n.12 (2007) ("[T]he alleged discharge of [plaintiff] in violation of the [California Family Rights Act] is *sufficient* to make the . . . cause of action for tortious wrongful discharge viable.") (emphasis added).  Accordingly, the Court denies Defendant's motion for summary judgment as to the claim for wrongful termination.

### G. Punitive Damages

Punitive damages may be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Gov't Code § 3294(a).  An employer may be held liable for punitive damages based upon the acts of its employee only if the employer "ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b).  "With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." *Id.*  The term "managing agent" includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566-67 (1999).  A "managing agent" must "exercise[] substantial discretionary authority over significant aspects of a corporation's business." *Id.* at 577.  Corporate policy refers to "formal policies that affect a substantial portion of the company" and which are "likely to come to the attention of corporate leadership," thereby "justif[ying] punishing an entire company for an otherwise isolated act." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 715 (2009).

The clear and convincing standard "requires a finding of high probability so clear as to leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of every reasonable mind." *Scott v. Phoenix Schs., Inc.*, 175 Cal. App. 4th 702, 715 (2009) (quoting *Lackner v. North*, 135 Cal. App. 4th 1188, 1211–1212 (2006)).  This does not mean that the plaintiff must "'prove a case for punitive damages' at the summary judgment stage." *Furlow*, 2019 WL 9834332, at *16 (quoting *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009)).  Ordinarily, "the question

17

of whether the defendant's conduct will support an award of punitive damages is for the trier of fact." *Spinks*, 171 Cal. App. 4th at 1053.

Defendant argues that the Court should find that punitive damages are unavailable as a matter of law because Plaintiff "has no evidence that an officer, director, or managing agent engaged in or authorized oppressive, fraudulent, or malicious conduct." (Def.'s Mem. at 21.) The Court disagrees and concludes that there are triable issues of fact both as to (1) whether Hargrave and Delacruz were managing agents, and (2) whether Defendant's conduct amounted to "oppression, malice, or fraud." Cal. Gov't Code § 3294(a).

### 1. Whether Hargrave and Delacruz are Managing Agents

It is clear that at least two individuals "who participated in the decisions to terminate" Plaintiff's employment were Hargrave and Delacruz. (Def.'s Mem. at 22.) In its reply brief, Defendant explains that both Hargrave and Delacruz submitted declarations stating that they "do not unilaterally formulate, develop, or determine any Plus One policies" and that they "do not exercise substantial independent authority and judgment such that [their] decisions solely determine Plus One's corporate policy." (Def.'s Reply in Supp. of Mot. for Summ. J. ("Def.'s Reply") 10, ECF No. 27, quoting Delacruz Decl. ¶ 22; Hargrave Decl. ¶ 3.)

Defendant correctly notes that a supervisor with the ability to hire and fire other employees is not necessarily a "managing agent." *See White*, 21 Cal. 4th 397, 421 (1994) (a supervisor with authority to hire and fire other employees does not necessarily have "discretionary authority over decisions that ultimately determine corporate policy"). However, in moving for summary adjudication on punitive damages, the employer has "the initial burden to produce sufficient evidence to make a prima facie showing that there were no triable issues regarding whether" Hargrave and Delacruz "were managing agents" of Plus One. *Davis v. Kiewit Pac. Co.*, 220 Cal. App. 4th 358, 369 (2013). Where, as here, Defendant simply "restat[es] the applicable legal standard under *White* for the determination of whether" Hargrave and Delacruz were "its managing agent[s]," with no

citation to evidence as to the scope of their job responsibilities, Defendant does not "satisfy its initial burden of production." *Id.*; *see also White*, 21 Cal. 4th at 577–78 (because supervision of eight retail stores and 65 employees was a significant aspect of corporation's business, a zone manager who supervised those stores and exercised significant discretionary authority affecting those stores and company policy was a managing agent). Here, Defendant simply states that Hargrave and Delacruz "do exercise substantial independent authority" and that they do not "determine Plus One's corporate policy." Whether this is so is a question for the trier of fact. In the record presently before the court, the scope of Delacruz and Hargrave's work responsibilities is not clear.

       2.  <u>Whether Defendant's Conduct Amounted to Oppression, Malice, or Fraud</u>

"'Malice' is defined as 'conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.'" *Colucci v. T-Mobile USA, Inc.*, 48 Cal. App. 5th 442, 454 (2020) (quoting Cal. Civ. Code § 3294(c)(1)). "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294(c)(3). "The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages. . . . Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate." *Id.* at 455 (quoting *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994)).

A reasonable trier of fact could conclude that Defendant acted with malice or fraud. "Malice . . . may be inferred from the circumstances of a defendant's conduct." *Monge v. Superior Court*, 176 Cal. App. 3d 503, 511 (1986). A jury could conclude that Defendant's pattern of conduct consisting of sending an email to an inaccessible inbox and attempting to terminate Plaintiff's employment by mailing two letters without an apartment number, and which Plaintiff asserts she never received, was done with "malice or fraud" and was

not merely negligence or carelessness.  As noted, Defendant had other proven methods of communication with Plaintiff available to it (text message and phone) and chose not to employ those methods.

Because the record does not indicate the scope of Hargrave and Delacruz's responsibilities, Defendant has failed to meet its burden of showing an absence of triable issues regarding whether Hargrave and Delacruz were managing agents.  Additionally, a reasonable trier of fact could conclude that Defendant's pattern of conduct amounted to "oppression, malice, or fraud."  Accordingly, Defendant's motion for summary judgment as to the issue of punitive damages is denied.

## V.    CONCLUSION

For the reasons explained above, the Court **DENIES** Defendant's Motion for Summary Judgment in full.

**IT IS SO ORDERED.**

Dated:  July 26, 2023

Hon. Dana M. Sabraw, Chief Judge
United States District Court