UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER GARGANO,<br><br>                    Plaintiff,<br><br>     v.<br><br>PLUS ONE HOLDINGS, INC.,<br><br>                    Defendant. | Case No.: 22-cv-00735-DMS-MMP<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL** |

Pending before the Court is Plaintiff's motion for new trial. (ECF No. 101.) A jury trial on Plaintiff's claims for disability discrimination resulted in a verdict in favor of Defendant, Plus One Holdings, Inc. ("Defendant" or "Plus One") on all counts. Plaintiff Amber Gargano ("Plaintiff" or "Gargano") now moves for a new trial arguing that the verdict runs against the clear weight of the evidence and that Defendant's misconduct at trial impacted the jury's ability to reach a fair verdict. Defendant filed an opposition (ECF No. 107) to which Plaintiff replied (ECF No. 108). For the reasons set forth below, the Court denies Plaintiff's motion.

### I. BACKGROUND

#### A. Factual Background

The following is a summary of the full factual background as laid out in the Court's previous order. *See Gargano v. Plus One Holdings, Inc.*, No. 22-CV-00735-

1  DMS-MMP, 2023 WL 4768182, at *1–3 (S.D. Cal. July 26, 2023) (order denying
2  defendant's motion for summary judgment).  On April 18, 2022, Plaintiff filed a
3  complaint raising six claims: (1) disability discrimination in violation of California
4  Government Code § 12940(a); (2) failure to accommodate disability in violation of
5  California Government Code § 12940(m); (3) failure to engage in interactive process in
6  violation of California Government Code § 12940(n); (4) retaliation in violation of
7  California Government Code § 12940(h); (5) failure to prevent discrimination and
8  retaliation in violation of California Government Code § 12940(k); and (6) wrongful
9  termination in violation of public policy. (*See generally* Compl., ECF No. 1-3.)  From
10 2014 to 2020, Plus One employed Plaintiff as a fitness instructor, exercise specialist, and
11 personal trainer in San Diego.  In October 2020, Plaintiff suffered severe abdominal pain
12 and was diagnosed with diverticulitis, which required her to undergo surgery and take an
13 unpaid leave of absence from work.  Plaintiff completed the required paperwork and Plus
14 One approved her unpaid leave of absence through December 14, 2020.  On December 9,
15 2020, Plaintiff updated her direct supervisor that she likely could not return to work until
16 mid-January 2021.  On December 23, 2020, she provided another update to her
17 supervisor that she likely could not return until February 2021 or later.  Plaintiff offered
18 no further updates to her employer on her health condition and expected return date until
19 April 15, 2021—after she was terminated.

20    Plus One claimed it emailed Plaintiff on February 10, 2021, to seek additional
21 information from Plaintiff and her plans to return to Plus One.  Plaintiff asserted she
22 never received the email because it was sent to her work email address to which she
23 lacked access.  On March 18, 2021, Plus One mailed a physical letter to Plaintiff
24 requesting additional medical documentation to extend Plaintiff's leave.  Plaintiff
25 asserted she never received the letter and a copy of the letter produced in discovery
26 revealed it lacked Plaintiff's apartment number.  On March 30, 2021, Plus One mailed a
27 second letter to Plaintiff informing her that her employment had been terminated, which
28 Plaintiff again claimed she never received.  A copy of this second letter produced in

discovery also shows it lacked Plaintiff's apartment number.

Then, on April 15, 2021, Plaintiff sent a text message to her former direct supervisor to check in. The supervisor informed Plaintiff that Plus One had repeatedly tried to contact Plaintiff by email and mail. Later that day, a member of Plus One's Human Resources ("HR") department called Plaintiff and Plaintiff explained again to her that she had not received any email or mail communication from Plus One. On July 15, 2021, Plaintiff informed Plus One's HR personnel that she could return to work in August. On August 6, 2021, and again on August 27, 2021, Plus One informed Plaintiff that the company was reviewing Plaintiff's request to return to work. Thereafter, Plaintiff and Plus One had no further communications.

### B.   Procedural History and Trial

On May 20, 2022, Plus One removed this action from state court to federal court based on diversity jurisdiction. (ECF No. 1.) Discovery concluded in February 2023, (*see* Am. Scheduling Order ¶ 1, ECF No. 16), and Plus One filed its motion for summary judgment on March 13, 2023, (ECF No. 19). On July 26, 2023, the Court denied Plus One's motion for summary judgment in full, (ECF No. 39), and the case proceeded to jury trial on all claims. Before trial, the Court granted the Parties' joint motion to exclude evidence, which included the following provision:

> Defendant is precluded from entering evidence on, eliciting testimony regarding, or referencing collateral source benefits obtained by Plaintiff from the California Employment Development Department, including unemployment benefits and disability benefits.

(Order dated Aug. 3, 2023, at 1, ECF No. 49.)

The Court held a five-day jury trial on August 21–28, 2023. Evidence presented at trial established the following sequence of events:

- **September 8, 2020**: Plaintiff enrolled in IT classes as a "backup plan" before the onset of her disability due to her expressed concern about the future of the fitness industry amid the COVID-19 pandemic. She admitted she had applied for IT positions to supplement her income due to her reduced hours and earnings in the fitness industry.

- **October 6, 2020**: Plaintiff began to feel sick and experience gastrointestinal issues.
- **October 27, 2020**: Plaintiff commenced her leave of absence due to diverticulitis. Patrick Hargrave, her direct supervisor, requested that Plaintiff keep Plus One updated.
- **November 12, 2020**: Plaintiff requested that her medical providers extend her off-work period through mid-January.
- **November 17, 2020**: Plaintiff submitted her medical leave forms to Plus One from her Plus One email address. In the forms, Plaintiff attested that she was totally disabled and specified an expected return to work date of December 14, 2020. Plus One granted her request for unpaid leave through December 14, 2020.
- **December 8, 2020**: Hargrave asked Plaintiff if she could teach classes in January 2021 because he was putting together a class schedule for that month.
- **December 9, 2020**: Plaintiff responded, "2nd or 3rd week of January."
- **December 10, 2020**: Plaintiff began physical therapy and requested that her medical providers extend her "disability return to work date to mid January/February preferably February."
- **December 12, 2020**: Plaintiff again requested that her medical providers extend her leave, asking "Can you please extend my return to work date to mid January . . . I've already talked to my boss and he will [not] consider putting me back on the schedule until mid January."
- **December 17, 2020**: Dr. Lance Fuchs, Plaintiff's primary doctor, extended Plaintiff's period of disability leave to January 17, 2021. Plaintiff did not inform Plus One of this new date.
- **December 23, 2020**: Plaintiff informed Hargrave that she did not think she could teach in January 2021. This was Plaintiff's last communication with anyone at Plus One before her termination.
- **January 21, 2021**: Plaintiffs medical provider extended her disability leave to February 5, 2021. Plaintiff did not inform Plus One of this new date.
- **January 28, 2021**: Charina Delacruz, a member of Plus One's Human Resources

department, responded to an inquiry from Hargrave and informed him that Plaintiff remained on an approved leave of absence.

- **February 1, 2021**: Plaintiff enrolled in three IT classes.
- **February 10, 2021**: Delacruz emailed Plaintiff at her Plus One email address to ask about her status. Plaintiff denied receiving this email and explained that she was not checking her Plus One email.
- **February 23, 2021**: Plaintiff asked Dr. Fuchs how long she could remain off work and on disability leave.
- **February 24, 2021**: Dr. Fuchs extended Plaintiff's disability leave to March 21, 2021. Plaintiff did not inform Plus One of this new date.
- **March 18, 2021**: Delacruz mailed a letter to Plaintiff to inform her that she needed to provide a status update Plus One. The letter explained that Plaintiff had been on leave as a medical accommodation which was approved based on an anticipated return date of December 14, 2020. The letter stated that "in order to approve any additional leave," Plus One "will need an updated fitness for duty form to review and determine if we can reasonably accommodate." Plaintiff denied receiving the letter. Although the letter itself did not include Plaintiff's apartment number, Delacruz testified that she wrote Plaintiff's correct address with apartment number on the envelope that was mailed. A copy of the envelope was not produced.
- **March 19, 2021**: Gargano requested her medical provider extend her disability leave. Dr. Fuchs extended her disability leave through April 25, 2021. Plaintiff did not inform Plus One of this new date.
- **March 29, 2021**: Hargrave communicated to Delacruz his need to plan for staffing and fill Plaintiff's position. Delacruz informed Hargrave that he could terminate Plaintiff's employment. Hargrave did so.
- **March 30, 2021**: Delacruz mailed Plaintiff her termination letter, which stated: "Although we have accommodated your leave through March 29, 2021, we cannot commit to continue holding this position for you indefinitely … ." Plaintiff testified she

never received the letter. Plaintiff's address as typed in the letter lacked her apartment number. However, Delacruz testified that she wrote the correct address with apartment number on the envelope. A copy of the envelope was not produced.

- **April 15, 2021**: Plaintiff reached out to Hargrave who connected her with Delacruz. Delacruz told Plaintiff to reach out when she was cleared to return to work and Delacruz would check with Hargrave to see if her position remained open at that time.
- **April 23, 2021**: In an email to Delacruz, Plaintiff stated she was on disability leave through April 25, 2021, and that her disability leave would be "extended again every few weeks" until she recovered.
- **May 12, 2021**: Plaintiff sent her medical work status reports to Plus One.
- **August 9, 2021**: Plaintiff was medically cleared to return to work, but Plus One informed her that her old position was no longer available. Plus One informed Plaintiff that she could apply for other positions, but Plaintiff did not do so.

There was conflicting evidence presented at trial as to whether Plaintiff's previous position remained available as of August 9, 2021. Hargrave testified that Plus One had not hired anyone to replace Plaintiff after she went on leave. (Trial Tr. Day 1, at 171–72, ECF No. 72.) However, Plus One maintained that Plaintiff's position was no longer available because in reallocating Plaintiff's hours to two other employees, those two employees may have begun to work more than 30 hours per week, thereby exceeding the threshold to become benefits-eligible (Trial Tr. Day 2, at 334–35, ECF No. 73), and increasing Plus One's costs.

During trial, Defendant violated the Court's Order (ECF No. 49) by repeatedly referencing the disability benefits Plaintiff received while she was on disability leave. To remedy the prejudicial effect that such references may have had, the Court issued a curative instruction, which provided:

> It is uncontested that Plaintiff had a physical disability between October 28, 2020, when she first requested to take a medical leave of absence from her job at Defendant Plus One, and August 9, 2021, when her doctor cleared her to return to work. It is also uncontested that between

October 28, 2020, and March 30, 2021, Plaintiff was on unpaid leave from her job at Plus One and earned no income from Plus One.

You may not draw an adverse inference from the fact that Plaintiff applied for state benefit programs and received state benefits for which she was eligible between October 28, 2020, and August 9, 2021.

(Jury Instr. No. 11, ECF No. 81, at 13.)

It was also established at trial that Hargrave had Plaintiff's phone number and had demonstrated an ability to communicate with Plaintiff by telephone and text message.

On August 25, 2023, day four of trial, the parties stipulated to dismissal of two claims: (5) failure to prevent discrimination and retaliation in violation of California Government Code § 12940(k), and (6) wrongful termination in violation of public policy—in exchange for a waiver of fees and costs as to those specific claims. (Trial Tr., Day 4, at 582, ECF No. 94.) The jury returned a unanimous defense verdict on the remaining four claims. (ECF No. 86.) The Court entered judgment in favor of Defendant on September 7, 2023. (ECF No. 96.) Plaintiff filed the instant motion for new trial on October 5, 2023. (Pl.'s Mot., ECF No. 101.) Plus One filed its opposition on October 20, 2023, (ECF No. 104), and on October 27, 2023, Plaintiff filed her reply, (ECF No. 107). On October 30, 2023, the Court took the motion under submission without oral argument. *See* S.D. Cal. Civ. L.R. 7.1(d)(1).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 59 authorizes a federal district court to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). "Because Rule 59 does not instruct on the grounds upon which a motion for a new trial may be granted," courts "look to the grounds historically recognized . . . including, but not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Hooper v. County of San Diego*, No. 07-cv-1647-JAH, 2024 WL 1318847, at *3 (S.D. Cal. Mar. 27, 2024) (quoting *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th

1  Cir. 2007)). "The grant of a new trial is 'confided almost entirely to the exercise of
2  discretion on the part of the trial court.'" *Murphy v. City of Long Beach*, 914 F.2d 183,
3  186 (9th Cir. 1990) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

A court may grant a new trial "if the verdict is against the clear weight of the evidence," but "not . . . simply because the court would have arrived at a different verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). A court should grant a new trial on weight-of-evidence grounds only if the court "is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987). A court's "[d]oubts about the correctness of the verdict are not sufficient grounds for a new trial …." *Id.* at 1372.

A court may grant a new civil trial due to attorney misconduct only if "the moving party . . . demonstrate[s] [that] adverse counsel's misconduct . . . 'substantially interfered' with the moving party's interest." *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1405 (9th Cir. 1995). "[T]he 'flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" *Kehr v. Smith Barney, Harris Hupham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (quoting *Standard Oil Co. of Cal. v. Perkins*, 347 F.2d 379, 388 (9th Cir. 1965)) (emphasis added).

### III.  DISCUSSION

Plaintiff advances two main arguments in support of her motion for new trial. First, Plaintiff argues that the verdict in favor of Defendant is against the clear weight of the evidence. (Pl.'s Mot. at 7–13.) Second, Plaintiff argues that Defendant's misconduct at trial impacted the jury's ability to arrive at a fair verdict. (*Id.* at 13–14.) For the reasons explained below, the Court rejects both arguments.

### A.  Weight and Sufficiency of Evidence

The jury's verdict in favor of Defendant does not run against the clear weight of the evidence. The evidence adduced at trial did not weigh overwhelmingly in favor of either party and the jury would have been justified to find for either party. For the

reasons explained below, the Court finds that jury's verdicts on all counts were rational and consistent with the weight of evidence presented at trial.

### 1. Disability Discrimination

To prevail on her theory of disability discrimination, the Parties agree that Plaintiff was required to prove that (1) Defendant was an employer; (2) Plaintiff was an employee of Defendant; (3) Defendant knew that Plaintiff had a physical disability; (4) Plaintiff was able to perform the essential job duties of her current position, either with or without reasonable accommodation for her physical disability; (5) Defendant discharged Plaintiff; (6) Plaintiff's physical disability was a substantial motivating reason for Defendant's decision to discharge Plaintiff; (7) Plaintiff was harmed; and (8) Defendant's conduct was a substantial factor in causing Plaintiff's harm. (Jury Instr. No. 12, ECF No. 81.) *See* Judicial Council of California Civil Jury Instruction ("CACI") 2540. A jury should return a verdict for Defendant if it finds that Plaintiff failed to prove any element of the claim. The jury here could have rationally determined that Plaintiff failed to prove, among others, element four (that Plus One could have provided a reasonable accommodation) or element six (that Plaintiff's physical disability was a "substantial motivating reason" for Plus One's termination decision).

#### *a. Reasonable Accommodation*

The jury could have rationally concluded that Plus One was unable to provide Plaintiff with a reasonable accommodation because the leave of absence Plaintiff requested amounted to an unreasonable indefinite leave. It was undisputed that Plaintiff was totally disabled and unable to perform the essential functions of her position until she was cleared to return on August 9, 2021, (*see* Jury Instr. 11, ECF No. 81), and the only accommodation Plaintiff sought was a leave of absence. The jury was instructed:

> When the employee cannot presently perform the essential functions of the job, or otherwise needs time away from the job for treatment and recovery, holding a job open for an employee on a leave of absence may be a reasonable accommodation provided that the leave is likely to be effective in allowing the employee to return to work at the end of the leave, with or

without further reasonable accommodation, and does not create an undue hardship for the employer. An employer, however, is *not required to provide an indefinite leave of absence* as a reasonable accommodation.

(Jury Instr. No. 17, ECF No. 81, emphasis added.) *See* Cal. Code Regs. tit. 2, § 11068(c).

This Court previously explained in its order denying Plus One's motion for summary judgment that "[w]hether Plaintiff's requested accommodation amounted to a request for indefinite leave is a genuine issue of material fact," (Order denying Summ. J. at 11, ECF No. 39), and left the issue for the jury to decide. This Court explained:

> Summary judgment in the employer's favor can be appropriate where the identified accommodation can only be construed as a request for indefinite leave. *See, e.g.*, *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 744 (9th Cir. 2011) (employer not required to further extend disability period when it has afforded a period sufficient for rehabilitation). "An unreasonable indefinite leave may be present, for example, where the accommodation at issue would involve 'repeated leaves of absence for an employee who has a poor prognosis of recovery.'" *Furlow* [*v. TWC Admin., LLC*, No. 18-CV-01734-JAK, 2019 WL 9834332, at *8 (C.D. Cal. Aug. 23, 2019)] (quoting *Nadaf-Rahrov* [*v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 988 (2008)]).

(Order denying Summ. J. at 10.) The jury could have found that Plus One reasonably accommodated Plaintiff with a leave of absence at first when there was a set end date of December 14, 2020. The jury could have rationally concluded that Plaintiff's multiple extensions of her disability status, which she did not communicate to Plus One, left Plus One with the understanding that Plaintiff sought an unreasonable indefinite leave of absence. Plus One's letter to Plaintiff dated March 30, 2021, further shows that Plus One believed Plaintiff's leave of absence was indefinite in duration: "Although we have accommodated your leave through March 29, 2021, we cannot commit to continue holding this position for your indefinitely … ." It is undisputed that Plaintiff eventually did recover and was cleared to return to work on August 9, 2021. But at the time Plus One terminated Plaintiff's employment, Plaintiff's prognosis for recovery was unclear. "Reasonable accommodation does not require the employer to wait indefinitely for an

employee's medical condition to be corrected." *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226–27 (1999) (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998)). Accordingly, the jury could have rationally concluded that Plaintiff sought an unreasonable indefinite leave of absence and that Plaintiff could not "perform the essential job duties of her current position … with reasonable accommodation." (Jury Instr. No. 12, ECF No. 81.)[1]

### b. Substantial Motivating Reason

Likewise, there was ample evidence presented at trial to allow the jury to rationally find that Plus One terminated Plaintiff's employment not because of her physical disability, but because she had abandoned her position. The uncontested evidence showed that Plaintiff had no communication with her employer between December 23, 2020, and April 15, 2021—after she was terminated. When Plaintiff first took a leave of absence for her disability, she indicated that she expected to return to work on December 14, 2020. Plaintiff's medical providers extended her disability status several times beyond this date, but Plaintiff never communicated those extensions to her employer.

It is true that Plus One had means to contact Plaintiff—telephone and text message—which it did not use. And there was some evidence presented that Plus One sent letters to Plaintiff which Plaintiff did not receive because Plus One omitted Plaintiff's apartment number from her mailing address. A jury could have credited the evidence and found that Plaintiff's disability was a "substantial motivating reason" for Plus One's decision to terminate Plaintiff's employment. But as explained above, the evidence also could have led a rational jury to find that Plus One terminated Plaintiff's employment not because of her disability, but because she had abandoned her position. The fact that there was conflicting evidence regarding causation "is not grounds for

---

[1] Because the Court concludes the jury could have rationally found that Plaintiff failed to establish the prima facie elements of the claim, the Court need not consider whether there was evidence in the record to support Defendant's "undue hardship" defense.

granting a new trial." *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992). "Where the jury could have reached a number of different conclusions, all of which would have sufficient support based on the evidence, the jury's findings will be upheld." *Id.*; *see* 11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2806 (3d ed. 2023) ("[T]he more sharply the evidence conflicts, the more reluctant the judge should be to substitute his judgment for that of the jury.").

The Ninth Circuit prohibits a trial court from granting a new trial on weight-of-evidence grounds if there was a "reasonable basis" for the jury's verdict. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). The jury's verdict in favor of Plus One on the disability discrimination claim was rational and did not run "contrary to the clear weight of the evidence" presented at trial. *Hilborn v. Metro. Grp. Prop. & Cas. Ins. Co.*, 306 F.R.D. 651, 655 (D. Idaho 2015). Accordingly, the Court declines to disturb the jury's verdict.

    2. <u>Failure to Accommodate</u>

To prevail on her failure to accommodate claim, the Parties agree that Plaintiff was required to prove that: (1) Defendant was an employer; (2) Plaintiff was an employee of Defendant; (3) Plaintiff had a physical disability; (4) Defendant knew of Plaintiff's physical disability; (5) Plaintiff was able to perform the essential duties of her current position or a vacant alternative position to which she could have been reassigned with reasonable accommodation for her physical disability; (6) Defendant failed to provide reasonable accommodation for Plaintiff's physical disability; (7) Plaintiff was harmed; and (8) Defendant's failure to provide reasonable accommodation was a substantial factor in causing Plaintiff's harm. (Jury Instr. No. 14, ECF No. 81.) *See* CACI 2541; Cal. Gov't Code § 12940(m). The elements of this claim overlap with the elements of her disability discrimination.

The jury could have concluded that Plaintiff failed to prove element five. It was undisputed that Plaintiff was totally disabled and could not perform the essential functions of her position until August 9, 2021. The jury could have rationally found that

the accommodation Plaintiff sought was an unreasonable indefinite leave of absence which Plus One was not required to provide. Thus, the jury could have rationally found that Plaintiff could not "perform the essential duties of her current position … with reasonable accommodation." (Jury Instr. No. 14, ECF No. 81.) The Court therefore declines to disturb the jury's verdict. *See Lyophile-Cryochem Corp. v. Cutter Lab'ys*, 78 F. Supp. 903, 904 (N.D. Cal. 1948), *aff'd in part, rev'd in part*, 179 F.2d 80 (9th Cir. 1949) (district court "should not substitute [its] judgment on the facts for that of the jury" "except in extreme cases" where jury verdict is irrational).

### 3. Failure to Engage in Interactive Process

To prevail on her claim for failure to engage in the interactive process, the Parties agree that Plaintiff was required to prove that (1) Defendant was an employer; (2) Plaintiff was an employee of Defendant; (3) Plaintiff had a physical disability that was known to Defendant; (4) Plaintiff requested that Defendant make reasonable accommodation for her physical disability so that she would be able to perform the essential job requirements; (5) Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that she would be able to perform the essential job requirements; (6) Defendant failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made; (7) Plaintiff was harmed; and (8) Defendant's failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff's harm. (Jury Instr. No. 19, ECF No. 81.) *See* CACI 2546; Cal. Gov't Code § 12940(n). The elements of this claim overlap with the elements of the claims discussed above.

The jury could have concluded that Plaintiff failed to prove element five. As explained, the uncontested evidence produced at trial showed that Plaintiff had no communication with her employer between December 23, 2020 and April 15, 2021— after she was terminated. Plaintiff's medical providers extended her disability status several times beyond the return date she initially provided to Plus One, December 14, 2020, but Plaintiff never communicated those extensions to her employer. Although

conflicting evidence was presented at trial, the jury could have rationally found that Plaintiff was not "willing to participate in an interactive process to determine whether reasonable accommodation could be made." (Jury Instr. No. 19, ECF No. 81.) Accordingly, the jury's verdict in favor of Plus One on the failure to engage in the interactive process claim did not run "contrary to the clear weight of the evidence" presented at trial. *Hilborn*, 306 F.R.D. at 655. The Court therefore declines to disturb the jury's verdict. *See Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 251 (9th Cir. 1957) (jury verdict should be set aside "[i]f the judge is of opinion that the verdict of the jury was against the weight of the evidence or based on evidence that was false").

    4. <u>Retaliation</u>

  To prevail on her retaliation claim, the Parties agree that Plaintiff was required to prove that: (1) Plaintiff requested a reasonable accommodation; (2) Defendant discharged Plaintiff; (3) That Plaintiff's requesting a reasonable accommodation was a substantial motivating reason for Defendant's decision to discharge Plaintiff; (4) Plaintiff was harmed; and (5) Defendant's decision to discharge Plaintiff was a substantial factor in causing her harm. (Jury Instr. No. 20, ECF No. 81.) *See* CACI 2505; Cal. Gov't Code § 12940(h).

  The jury could have found that Plaintiff failed to prove element three—causation. As explained above, Plaintiff had no communication with her employer between December 23, 2020, and April 15, 2021. When Plaintiff first took a leave of absence for her disability, she indicated that she expected to return to work on December 14, 2020. Plaintiff's medical providers extended her disability status several times beyond that date, but Plaintiff never communicated those extensions to Plus One. There was ample evidence presented at trial to permit a rational jury to find that Plus One terminated Plaintiff's employment *not* because she had requested an accommodation but because she had abandoned her position. Accordingly, the jury's verdict in favor of Plus One on the retaliation claim did not run "contrary to the clear weight of the evidence." *Hilborn*, 306

F.R.D. at 655. The Court therefore declines to disturb the jury's verdict.

### B. Defense Counsel's Misconduct

Plaintiff's second argument in support of her motion for new trial is that Defendant's misconduct at trial impacted the jury's ability to arrive at a fair verdict. (*Id.* at 13–14.) The Court agrees that counsel for Plus One violated the Court's order which was based on the parties' stipulation. Plus One willingly agreed to refrain from referencing the disability benefits Plaintiff received while she was on disability leave. (Order, ECF No. 49.) However, after consideration of this issue the Court declines to grant a new trial. Any possible prejudicial effect caused by Defendant was minimal and cured by the Court's remedial instruction.

Defendant argues that the intent behind the stipulated evidentiary order (ECF No. 49) was to exclude reference to collateral source benefits. Defendant argues it did not violate the order because the collateral source doctrine was not at issue after Plaintiff waived her claim to economic damages. (Def.'s Opp'n at 23 n.6.) This is not so. The parties' stipulation had already contemplated Plaintiff's waiver of economic damages and lost wages. The language of the stipulated order, to which both parties consented, simultaneously prohibited Defendant from "eliciting testimony regarding, or referencing collateral source benefits obtained by Plaintiff from the California Employment Development Department, including unemployment benefits and disability benefits" and prohibited Plaintiff "from entering evidence on, eliciting testimony regarding, or referencing economic damages, including lost wages." (Order, ECF No. 49 ¶¶ 2–3.) Defendant's interpretation of the stipulated order would render Paragraph 2 redundant: Plaintiff's waiver of economic damages was known from the time Defendant consented to the stipulated order and memorialized in Paragraph 3 of the order. Defendant remained bound by its agreement not to reference Plaintiff's receipt of unemployment or disability benefits. Thus, Defendant's argument to evade its obligation to refrain from presenting evidence on or referencing Plaintiff's disability benefits at trial is unpersuasive.

      Plaintiff argues that Defendant's references to Plaintiff's disability benefits at trial could have prejudiced Plaintiff by creating the impression that Plaintiff was gaming the system by collecting benefits while enrolled in IT classes with an intent to transition to a career in IT and not to return to her fitness position at Plus One. However, the Court ameliorated any such prejudice by giving a remedial instruction, with the Parties' consent, which conclusively established (1) that Plaintiff had a physical disability between October 28, 2020, and August 9, 2021, and (2) that Plaintiff earned no income from Plus One after October 28, 2020, when she was placed on unpaid leave. (Jury Instr. No. 11, ECF No. 81.) The Court further instructed that the jury "may not draw an adverse inference from the fact that Plaintiff applied for state benefit programs and received state benefits for which she was eligible between October 28, 2020, and August 9, 2021." (*Id*.) The remedial instruction addressed any possible prejudice resulting from Defendant's improper references to Plaintiff's disability benefits. *See Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 543 (6th Cir. 2014) (district court did not abuse its discretion in denying motion for new trial where seller solicited testimony in violation of the court's pretrial evidentiary rulings because the improper questions took place "in the space of a few minutes during a multi-day trial" and any resulting prejudice was insignificant); *Venson v. Altamirano*, 749 F.3d 641, 657 (7th Cir. 2014) (in Section 1983 action, defense counsel's single reference to an "open-air drug market" in violation of district court's in limine ruling barring reference to the area where an arrest occurred as "a high crime or drug area" was not prejudicial and did not warrant a new trial).

      Plaintiff's other allegations of misconduct do not warrant a new trial. Plaintiff alleges that Plus One's reference to its Family and Medical Leave Act (FMLA) policy "created the illusion of a policy applicable to Plaintiff" and put the FMLA policy "in front of Plaintiff at her deposition and attempted to convince Plaintiff it applied to her leave and that she was bound by it." (Pl.'s Mot. at 14.) Plaintiff then alleges that counsel for Defendant "elicited false testimony" from Plus One employees about "non-existent policy language purportedly obligating Plaintiff to communicate," (*id.*, citing Trial Tr. at

300, 362–63), and then relied on this false testimony in its closing argument to misleadingly suggest that Plaintiff had failed to abide by the policy, which was inapplicable. (*Id.*) It is true that Plus One's FMLA policy was inapplicable to the extent it conflicted with the requirements of California law. However, the Court rejects these arguments. It is unclear to the Court how any alleged misconduct during Plaintiff's pretrial deposition could have unfairly prejudiced Plaintiff at trial. In addition, Plaintiff does not explain how the alleged misconduct at trial unfairly prejudiced her.[2] *See Christmas v. City of Chicago*, 682 F.3d 632 (7th Cir. 2012) (counsel's conduct did not prejudice jury and warrant new trial where district court properly instructed jury on the law including that statements of counsel are not evidence). Accordingly, the Court concludes that counsel's conduct did not amount to a miscarriage of justice warranting a new trial.

### IV. CONCLUSION AND ORDER

For the reasons explained, the Court **DENIES** Plaintiff's motion for new trial.

**IT IS SO ORDERED.**

Dated: April 24, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court

---

[2] For the same reason, the Court finds that Plaintiff's remaining misconduct arguments do not warrant a new trial: (1) that Defendant stated it provided "Plaintiff with a leave that State Law did not provide," (2) that Defendant argued "undue hardship" is defined as Plaintiff's lack of communication; (3) Defendant's misrepresentation of "indefinite" leave; (4) Defendant's argument that Plaintiff made an admission she did not make. (Pl.'s Mot. at 14.)